* This case was decided at June Term, 1838, but for some reason has not been heretofore reported.
The bill, which was filed at Spring Term, 1835, charged that Herbert Tatum died intestate, in 1829, and (114) that letters of administration on his estate had been duly granted to the defendants; that the said Herbert, for some time before his death, was greatly indebted; that the plaintiffs, together with Allen, one of the defendants, had, in August, 1829, *Page 88 
become sureties for the said Herbert in a guardian bond which he had given as guardian to certain words; that these wards had afterwards recovered a judgment against the said sureties for about the sum of $359, on account of a breach of the said bond; that the amount so recovered was paid jointly by the sureties, and a receipt was taken in the name of the plaintiff Henry; that Henry then brought a suit against the administrators of Herbert to recover the sum so paid, and at February Term, 1832, of Guilford County Court, obtained a judgment therefor, but the plea of "fully administered"
was found in favor of the administrators; that the plaintiff Henry then proceeded against the real estate, but could only obtain by the sale thereof a portion of the debt, to-wit, the sum of $173; that the balance of the debt remained unsatisfied, there being no personal property in the hands of the administrators which could be treated as assets, nor any real estate remaining in the hands of the heirs. The bill further charged that the said Herbert Tatum, two days before his death, to-wit, on 31 August, 1829, executed a deed of gift to the defendant, Dudley Tatum, for two negro slaves, Sam and Rachel, without any consideration, except that of natural affection; that the said Herbert at that time was not only indebted to others, but also owed the debt which the plaintiffs were compelled to pay as sureties, and the bill charged that this conveyance was fraudulent and void as to creditors, and that the plaintiffs had a right to be substituted in the place of the creditors, whose demands they had paid, as above set forth, and, after alleging a demand and refusal, prayed that the said Dudley Tatum might be decreed to pay the plaintiffs their claim, to — with two-thirds of the debt before mentioned, or that the slaves, Sam and Rachel, might be decreed to be sold for the satisfaction thereof.
The defendants, in their answers, admitted all the material facts stated in the plaintiffs' bill, except that they did not (115) admit that the said Herbert died insolvent, but averred that if his lands had sold for a fair price, there would have been enough to discharge his debts. They submitted whether, as the plaintiffs had elected to go against the real estate of the said Herbert, they should now be permitted in this Court to pursue the negroes, mentioned in their bill, in the hands of the defendant Dudley. They also relied upon the general acts of limitations, and also upon the act, passed in 1820, in relation to the possession of slaves (1 Rev. St., ch. 65, sec. 18). *Page 89 
There is no allegation that the plaintiffs, by any misconduct or management, caused the lands to sell for less than their real value. We must take it, therefore, that the lands brought what they were worth at a ready-money sale.
The plaintiffs, in this Court, are subrogated to all the rights of the creditors, whose debts they have been compelled to pay. They have certainly a right to satisfaction, in some way, out of the slaves transferred without consideration by the debtor to Dudley Tatum, by force of the statute of 13th Elizabeth and our act of Assembly (1 Rev. Stat., ch. 50, sec., 1) as all the rest of the personal and real assets liable to debts had been exhausted. It has been doubted, however, whether the plaintiffs were not estopped to consider the two slaves as assets of the intestate, inasmuch as the plea of plene administravit was, at law, found against them, and non constat but that the two slaves were taken into consideration as assets by the jury and were covered by that finding. But it is apparent, upon the answers, that the two slaves were not brought to the consideration of the jury as assets of the intestate when they found the issue for the defendants. And the defendants have not set up the verdict and judgment at law as a defense, either by plea or in the answers, against an investigation in this Court, whether these negroes are not in truth assets and, as such, liable to the satisfaction of the plaintiff's judgment. The plaintiffs are, we think entitled to a decree that the two slaves mentioned be sold for the satisfaction of their debt. (116)
The circumstances of their having first pursued the land is no bar to their now proceeding against these slaves, as the land proved insufficient to satisfy the debt.
We are at a loss to see that the statutes of 1715 (1 Rev. Stat., ch. 65, sec. 3) and of 1820 (1 Rev. Stat., ch. 65, sec. 18), relied upon in the answers, have any application.
PER CURIAM. Decree accordingly.
Cited: Martin v. Harding, 38 N.C. 605. *Page 90 
(117)